**Patsy Ricciuti ROSS, Plaintiff,**

v.

**JONES & LAUGHLIN STEEL CORPORATION, Defendant.**

**Civ. A. No. 77–955 H.**

United States District Court,
W. D. Pennsylvania.

April 4, 1979.

Lee A. Lazar, Kuhn, Engle & Stein, Pittsburgh, Pa., for plaintiff.

John C. Unkovic, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., seeking declaratory, injunctive, and monetary relief on the grounds that she was victimized by the defendant's sexually discriminatory hiring practices.

The case was tried to the court, which now makes the following Findings Of Fact and Conclusions Of Law upon which judgment will be rendered in favor of the defendant and against the plaintiff.

### FINDINGS OF FACT

1. Plaintiff, Patsy Ricciuti Ross, is a female who resides within the Western District of Pennsylvania.

2. Defendant, Jones & Laughlin Steel Corporation, is a corporation doing business, among other places, at California, Pennsylvania, which is within the Western District of Pennsylvania.

3. Defendant's Coal Division comprises several deep coal mines and related general machine shop and preparation plant facilities.

4. Applications for jobs in defendant's Coal Division are accepted at only one location, a central employment office located in California, Pennsylvania.

5. One Ralph Boden is the Employment Supervisor for defendant's Coal Division.

6. On or about July 21, 1975, plaintiff filed a written application for a laborer's position with defendant.

7. From the time of her application until May, 1977, plaintiff was a self-employed beautician.

8. According to her application, plaintiff's entire work history after her graduation from high school had been as a trained cosmetologist. In fact she had never been employed as a laborer, although we accept as true her testimony at trial that she had done some laborer type work at home such as shoveling slag and carrying firewood.

9. Shortly after receiving plaintiff's application, Ralph Boden mailed employment reference inquiries regarding her to two beauty salons, which were the only places of prior employment listed by plaintiff on her application.

10. At the time of plaintiff's application, defendant had approximately 3,000 job applications on file for Coal Division laborer positions, and it received such applications at the rate of approximately 220 per month.

11. Defendant employs approximately ten percent of those who apply for Coal Division jobs, and as a matter of practice it does not interview all applicants.

12. Job vacancies in the defendant's coal preparation plant are filled in accordance with the provisions of a collective bargaining agreement by employees bidding for the vacant jobs. When no such bids are received, the vacancies are filled by applicants from outside the company.

13. From the date of her application until February, 1976, plaintiff was not contracted by defendant. In early February, 1976, plaintiff learned that defendant had several laborer positions available for outside hire at its coal preparation plant and telephoned defendant's California, Pennsylvania, central employment office to inquire about the open positions. She spoke with Ralph Boden and requested to be considered for one of the jobs.

14. Mr. Boden informed plaintiff that a Bulldozer Operator job and a Laborer-Outside job were to be filled by outside hire, but that he had "men" to fill these positions.

15. On February 17, 1976, shortly after the aforesaid telephone conversation with

Mr. Boden, plaintiff filed a "Charge of Discrimination" against the defendant with the United States Equal Employment Opportunity Commission (EEOC), alleging that because she was a female the defendant had not hired her.

16. The EEOC made a determination on May 11, 1977, that defendant had denied plaintiff employment because of her female sex and concluded that there was reasonable cause to believe that defendant had engaged in unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended.

17. On July 6, 1977, the EEOC issued a right-to-sue letter to plaintiff.

18. From July 21, 1975, until February, 1976, no employees were hired from the outside for the preparation plant.

19. In February, 1976, jobs were posted at the preparation plant for a bulldozer operator and a laborer-outside. These were not bid for, and thus were to be filled from the outside.

20. Plaintiff was not qualified for the open bulldozer operator's job, and it was filled by a qualified applicant.

21. On February 23, 1976, subsequent to the date plaintiff filed charges against defendant with the EEOC, one A. Phillips was hired for the open laborer-outside job. Mr. Phillips was an experienced laborer who had filed a number of job applications with the Coal Division, all of which had been rejected because at 6' 10" he was too tall to be considered for underground employment. He and a Mr. L. Smithberger had been recommended for employment by the superintendent of the preparation plant.

22. Later, on March 15, 1976, the Coal Division hired the aforesaid L. Smithberger, an experienced heavy equipment operator, as a preparation plant laborer-outside. Because the operation of the preparation plant involved a great deal of bulldozer work, Mr. Smithberger's experience as a bulldozer operator made him a desirable employee since he could be used as a substitute bulldozer operator whenever the need arose.

23. Finally, on March 23, 1976, the Coal Division hired one W. Hungerford as a preparation plant laborer-outside. Mr. Hungerford, a black man, had prior laboring experience in other jobs.

24. While two of the three men hired for outside laboring jobs in 1976 were recommended to the employment office by the plant preparation superintendent, the third was not, and there was no evidence to indicate that referrals by the plant superintendent were the exclusive or usual way outside laborers were selected. In fact, the employment office did not always hire individuals who had been referred by the plant superintendent.

25. The hiring of Messrs. Phillips, Smithberger, and Hungerford was because these men were qualified to perform the work and not because of any form of nepotism as alleged by the plaintiff.

26. Plaintiff was qualified for the laborer positions available for outside hire at the preparation plant, but while she was not hired for any of those jobs, her *application for employment* was not rejected by Ralph Boden at any time.

27. Plaintiff had no contact with defendant from February, 1976, until October 1976. On October 28, 1976, Mr. Boden telephoned plaintiff to inquire as to whether she wanted to be considered for a laborer opening in the Coal Division. Plaintiff responded that she was not interested in being employed by the Coal Division pending the outcome of her EEOC charge, and plaintiff never contacted defendant regarding employment thereafter.

28. Plaintiff began to wind down her hairdressing business in January, 1977, because of her impending marriage, and after she became pregnant in May, 1977, plaintiff had no desire for employment because she intended to stay at home and be a mother.

29. In 1975, the defendant received approximately 2,700 applications for general unskilled labor and hired 362 (13.41%). Of the 2,700 applications in 1975, 157 (5.8%) were from females. In 1976 the defendant received approximately 2,700 applications

for general unskilled labor jobs and hired 215 (7.96%). Of the 2,700 applications in 1976, 220 (8.1%) were from females.

30. Of the 362 people hired in 1975 for unskilled labor jobs, 18 (4.97%) were females, 14 (3.86%) of which were hired to full-time jobs. Of the 215 persons hired for unskilled labor jobs in 1976, 14 (6.51%) were females, of which 11 (5.12%) were hired to full-time jobs.

31. Ralph Boden testified that the defendant had an employment policy which he as employment supervisor followed which was non-discriminatory, inter alia, as to sex. There was no evidence, direct or circumstantial, which contradicted this testimony; in fact, the foregoing statistics for the years 1975 and 1976 essentially corroborate it, and the court therefore accepts it as truthful.

## DISCUSSION

■ At the trial plaintiff, a female, proved that (1) she applied and was qualified for one of the jobs for which defendant was seeking applicants, (2) she was not hired for any of the job vacancies, and (3) the defendant subsequently hired males to fill the jobs for which plaintiff was a qualified applicant. Thus, plaintiff established a prima facie case of discrimination under the "disparate treatment" theory of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ The plaintiff having established a prima facie case, the burden then shifted to the defendant "to articulate some legitimate, non-discriminatory reason for the . . . [plaintiff's] rejection." *McDonnell Douglas, supra,* p. 802, 93 S.Ct. p. 1824, *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957, 968 (1978).

The defendant met this burden. It produced evidence that one of the males who was hired had applied for work on a number of occasions over a period of years and that although he was an experienced laborer his height made him unsuitable for underground work, so when outside work became available he was hired. As to the second male hired, the defendant proved that in addition to being an experienced laborer he also was a qualified bulldozer operator. This made him particularly valuable as an outside laborer at the preparation plant, since bulldozers were used extensively there and he could substitute as an operator when the need arose. The third male hired was also an experienced laborer and, incidentally, a person from a minority group (black).

Mr. Boden testified that he was not motivated by any sexually discriminatory reasons in not hiring the plaintiff, that the company had a policy of non-discriminatory hiring practices which he followed, and that although he was not disputing plaintiff's *qualification* to do laborer work, her application indicated that her sole work experience was as a cosmetologist and revealed no experience at manual labor.

Mr. Boden's testimony was corroborated by statistics which indicated that for the years 1975 and 1976 the percentage of females hired by defendant for laboring jobs favorably approximated the percentage of females who applied for those jobs. See *Furnco,* 580, 98 S.Ct. p. 2951, 57 L.Ed.2d p. 969.

■ Plaintiff contended that there was a practice at the coal preparation plant of hiring applicants who were recommended for employment by the plant superintendent and argued that this constituted a form of nepotism which resulted in a "disparate impact" on female applicants, as prohibited by *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 22 L.Ed.2d 158 (1971), *Furnco,* 438 U.S. p. 572, 98 S.Ct. p. 2947, 57 L.Ed.2d p. 964. Although two of the three males hired as outside laborers at the coal preparation plant had been recommended for employment by the superintendent of that facility, there was no evidence that he was motivated by any sexually discriminatory considerations or that this was a practice to any significant extent. In addition, the employment supervisor testified that although he did receive recommendations from time to time from the superintendent, these were not always followed and, in effect, the em-

ployment supervisor was the individual who made the ultimate determination as to whether or not an applicant would be hired. In any event, we find nothing improper, per se, in a plant manager recommending persons for employment in the facility which he operates, and no evidence was produced in this case which even suggested that this "practice" had a "disparate impact" on female applicants or any other group as prohibited by *Griggs*. We therefore reject plaintiff's "disparate impact" theory.

We conclude from the foregoing that the defendant had a *McDonnell Douglas—Furnco* "legitimate non-discriminatory reason" for "rejecting" the plaintiff and hiring the males here in question; namely, the natural, reasonable, and legitimate desire of an employer to hire qualified experienced over qualified inexperienced people to fill job vacancies.

The plaintiff, of course, could have come forward to produce evidence that the legitimate non-discriminatory reasons proffered for her rejection were not valid and were merely a pretext for discrimination. See *Furnco* at p. 577, 98 S.Ct. at p. 2950, 57 L.Ed.2d at p. 968. But she did not, and we are left with the case in the posture above indicated, which we believe requires a finding for the defendant.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of this proceeding.

2. Venue properly lies in the Western District of Pennsylvania.

3. The defendant did not violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., in not hiring the plaintiff as an outside laborer.